[L. A. No. 1485.   Department One.—January 19, 1906.]

## JOHN STEWART, Appellant, v. NELSON G. DOUGLASS et al., Respondents.

PLEADING — SUSTAINING DEMURRER TO COMPLAINT—AMENDMENT—DISCRETION.—Upon the sustaining of a demurrer to the complaint the court has discretion either to allow an amended complaint to be filed, or to give judgment forthwith for the defendant, and this court will not interfere with its action either way, unless it is made to appear by the record that there has been an abuse of discretion.

ID.—RIGHT TO AMEND AFTER DEMURRER.—The right to amend after a demurrer is filed is absolute only when exercised before the demurrer is argued and submitted to the court for its decision.

ID.—COURSE OF ACTION TO ENFORCE RESULTING TRUST AND FOR ACCOUNTING — DEMURRER IMPROPERLY SUSTAINED.—Where, notwithstanding the informal nature of the complaint, it states a cause of action to enforce a resulting trust and for an accounting of the proceeds of the property embraced in the trust, the demurrer thereto was improperly sustained, and should have been overruled.

ID.—DISCOVERY OF MINE—EXPENDITURE BY DISCOVERER—INFORMATION—CONSIDERATION — AGREEMENT FOR JOINT LOCATION — BREACH — RESULTING TRUST.—Where the complaint shows that plaintiff by his own time, labor, and expense discovered a valuable mine, and disclosed its location to defendant Douglass in consideration of and reliance upon an existing agreement between them that the location thereof should be made in their joint names, it shows a sufficient consideration in equity to support the agreement; and where it shows a breach thereof by such defendant by locating the mine wholly in his own name and in that of another person with knowledge of the agreement, without plaintiff's consent, it shows a resulting trust in favor of the plaintiff with respect to the half interest which he was to have had under the agreement; and such

parties will be declared in equity to be trustees for the plaintiff, and be compelled to hold such half interest in trust for him and for his benefit.

APPEAL from a judgment of the Superior Court of San Diego County. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

E. Edgar Galbreth, and Barstow & Variel, for Appellant.

Titus & Shaw, Valentine & Newby, Patterson Sprigg, and Henderson, Wright & Schoonover, for Respondents.

SHAW, J.—The court below sustained a demurrer to the fourth amended complaint, denied the application of the plaintiff to file a fifth amended complaint and thereupon rendered judgment dismissing the action. From this judgment the plaintiff appeals.

It was not error for the court to refuse to allow further amendments to the complaint. When a demurrer is sustained to a complaint it is within the discretion of the court either to allow an amended complaint to be filed or to give judgment forthwith in favor of the defendant. The appellate court will in every such case sustain the action of the court below, whatever course it may take, unless it is made to appear by the record that there has been an abuse of discretion. The plaintiff merely asked leave to file an amended complaint, and, so far as the record discloses, did not show that there were any allegations of fact omitted from the complaint to which the demurrer had been sustained which, if inserted therein, would in any respect change its legal effect, nor make any statement whatever of the grounds or reasons for making the application for leave to amend. There was clearly no abuse of discretion shown. (*Kleinclaus* v. *Dutard,* 147 Cal. 245, [81 Pac. 516, 518].) The right to amend after the filing of a demurrer is absolute only when it is exercised before the demurrer is argued and submitted to the court for decision. (Code Civ. Proc., sec. 472.)

The principal question in the case is the sufficiency of the facts stated in the fourth amended complaint to constitute a cause of action to enforce a resulting or constructive trust. The plaintiff, by his own exertions and explorations, discov-

ered upon vacant government land in the county of San Diego a valuable mine of certain mineral known as "lepidolite," a variety of mica, and sent samples thereof to a glass-manufacturing company in New Jersey to be tested. The defendant Douglass was the secretary of said company, and, so far as appears, a stranger to the plaintiff. He immediately wrote to plaintiff, saying that he expected to be in California in the then ensuing month of February, 1898, asking plaintiff to be silent about the discovery until he (Douglass) could get to California, and stating that there might be something to their mutual advantage in said mineral deposits. In April, 1898, Douglass called on plaintiff in Los Angeles, and plaintiff then informed him of the discovery and of the nature and extent, but not the location, of said deposits. Douglass said that if the mineral proved valuable for glass manufacture his company would build a glass plant in Los Angeles, but that "it would be better for plaintiff and Douglass if they would retain the ownership of the mines themselves and sell the mineral to the glass company." The circumstances which it is claimed are sufficient to create the trust in favor of plaintiff are then alleged as follows: "That said defendant was informed at said time, that he (plaintiff) had a stone location on a part of said mineral property, being the property known as the 'Mission' claim, but plaintiff stated to said defendant that, if the claims were taken up as mining claims, that he (plaintiff) would be entitled to an undivided half-interest therein, and to this the defendant then agreed, and stated that he understood that, and that that was satisfactory to him. The plaintiff believed the statements and representations made to him by said defendant Douglass, and relied on said statements and representations and had full confidence in said Douglass and his said representations, and in consequence of such reliance he (plaintiff), on April 6, 1898, told said defendant of, and went with him to, and showed to him, said defendant, said ledges or lodes of lepidolite mineral herein described, and it was then and there concluded, understood, and agreed by and between said defendant Douglass and plaintiff, in consideration of the premises, and in accordance therewith, and of the consent of plaintiff then given thereto, that said defendant Douglass would without unnecessary delay, locate, or cause to be located, both of said ledges or lodes of lepidolite

mineral as mining locations or mining claims, in the names of plaintiff and said defendant, Douglass''—so that plaintiff would appear to be the owner of an undivided half thereof. It is further alleged that Douglass did locate the deposits as mining claims, but that instead of locating them in their joint names, as he agreed to do, he located one in his own name and the other in the name of the defendant Rosalind O. Butterfield, who, it is averred, had full knowledge of the agreement. Defendants realized some thirty thousand dollars from the proceeds of minerals mined therefrom, and upon due demand refused to convey to plaintiff any interest in the mining claims, or to account for the moneys received. It is not alleged that the plaintiff furnished any money or paid any of the expenses of surveying the claims, marking the boundaries, making the locations, or of working the mines, or that he in any way whatever assisted therein.

We are of the opinion that where one who has by his own labor and at his own expense discovered a mine, but has not made a location thereof under the mining laws, afterwards discloses to another the location of such mine, in consideration of, and in reliance upon, an agreement or understanding between them to the effect that the mine, when located, shall be the joint property of both, and where, in pursuance of such understanding, the further agreement is then made that the latter will locate the mine in their joint names, or for the benefit of both, so that each shall appear to be a half-owner thereof, the subsequent location of such mine by the latter in the name of himself alone, without the consent of the discoverer, will raise a resulting trust in favor of the discoverer with respect to the half-interest which was to belong to him under the agreement. The time and labor expended in making the discovery, coupled with the information given as to the situation of the mine, would be a sufficient consideration to support the agreement to make the location in their joint names, and to satisfy the demands of equity that there shall be an adequate and substantial consideration in order to raise a resulting trust. The manner of the pleading in the present case, it must be admitted, is crude and informal, but we think in substance it meets the propositions we have just stated. It is not expressly alleged that the plaintiff was induced to show the location of the mine by the promise of the defendant

that if he would do so the defendant would make the location
for plaintiff's benefit.  This, however, is substantially stated.
The averment that the plaintiff said that if the claims were
taken up the plaintiff would be entitled to a half-interest
therein, that defendant agreed to this, said he understood it,
and that it was satisfactory to him, must be understood to
mean that it was agreed that, if either party made the location,
the plaintiff was to have a half-interest in the claims.  On the
principle that the greater includes the less, this would be in
effect an agreement by defendant that if he located the mines
the plaintiff should have a half-interest therein.  The allega-
tion following this, to the effect that the plaintiff "relied on
said statements and representations," and "in consequence
of such reliance" conducted the defendant to the mines and
showed him their situation, may reasonably be understood,
and, in view of the immediate context and other general aver-
ments, should be construed as the equivalent of an allegation
that the disclosure thus made to the defendant was made by
the plaintiff on the faith of, and in consequence of, the agree-
ment previously stated to the effect that if either party located
it plaintiff was to be a half-owner therein.  The words "state-
ments and representations" are not technically the same as
the word "agreement," but, in view of the connection in
which the words appear and the previous and subsequent alle-
gations of the complaint, we think it is clear that they were
intended to refer to the previously alleged agreement, and
that they should be so understood.  The complaint, therefore,
sufficiently shows that the disclosure was made and procured
by means of the previous agreement, to which the defendant
was a party, to the effect that if he located the mines they
should be so located that the plaintiff should have a half-
interest therein.  It is then alleged that at this juncture the
parties made a formal agreement that the defendant should
locate the mines in the names of both, and in such a manner
that the plaintiff should appear of record to be a half-owner
thereof, but that instead of doing so he located them in the
name of himself and another, and afterwards repudiated all
interest of the plaintiff therein.  Upon these facts a resulting
trust would be created in favor of the plaintiff against the
defendant Douglass and any third person taking with notice
of plaintiff's rights, and such parties would be declared in

equity to be trustees for the plaintiff, and would be compelled to hold such half-interest in trust for him and for his benefit.

Upon the construction we have thus given to the language of the complaint, it is sufficiently certain with respect to the terms of the trust and the description of the property. The consideration is substantial and adequate. It is not claimed that the complaint is defective in other respects. Notwithstanding the informal character of the pleading, we think the complaint states a cause of action to enforce a resulting trust and for an accounting of the proceeds of the property embraced in the trust, and that the demurrer should have been overruled.

The judgment is reversed.

Angellotti, J., and McFarland, J., concurred.