[S. F. No. 6371.   Department Two.—July 3, 1914.]

ALICE AALWYN, Plaintiff and Appellant, v. IRA M. COBE et al., Defendants and Respondents; CHARLES W. SMITH et al., Defendants.

QUIETING TITLE—PLEADING—SUFFICIENCY OF COMPLAINT—ALLEGATION OF FRAUD—GENERAL DEMURRER.—A complaint which states in general form a cause of action to· quiet title to real estate, is not subject to general demurrer because it alleges certain fraudulent acts as the basis of the defendant's claim, without clearly stating the facts which constitute the alleged fraud.

ID.—UNCERTAINTY OF COMPLAINT—SPECIAL DEMURRER.—But such complaint is subject to special demurrer, if it is uncertain therefrom whether or not the plaintiff seeks to found her title upon that of some one of the defendants, and whether the alleged fraudulent acts of the defendants can cloud any title acquired by the plaintiff.

ID.—FRAUDULENT CONVEYANCES AS BETWEEN DEFENDANTS—INSUFFICIENCY OF ALLEGATIONS.—And such complaint is insufficient in its allegation of fraud on the part of the defendants in making conveyances from one to another for fraudulent purposes.

ID.—AMENDMENT OF COMPLAINT—DELAY IN ASKING LEAVE.—If a special demurrer to such complaint is sustained by an order making no mention of amendment, the plaintiff cannot complain of an order made upon motion, seventeen days later, denying leave to amend, where she does not appear at the hearing of the motion, or make a request for leave to amend.

ID.—LEAVE TO AMEND AFTER DEMURRER SUSTAINED—PRESUMPTION.— While it is error for a court arbitrarily to refuse permission to amend a complaint, after sustaining a special demurrer on the ground of uncertainty or the like, it is not necessary in making the order sustaining the demurrer to say anything about leave to amend, and error will not be presumed when the record fails to show that leave to amend was asked and refused.

ID.—SUSTAINING OF GENERAL AND SPECIAL DEMURRER—EFFECT OF FAILURE TO AMEND.—A plaintiff who· has declined to amend his complaint, after a demurrer thereto, which is both general and special, has been sustained, must stand upon his pleading as against both grounds of demurrer.

APPEAL from a judgment of dismissal of the Superior Court of San Mateo County.   G. H. Buck, Judge.

The facts are stated in the opinion of the court.

Arthur Crane, for Appellant.

P. L. Benjamin, and Sterling Carr, for Respondents.

MELVIN, J.—Plaintiff sued to quiet title to land claimed by her and in addition to the ordinary allegations in a complaint under sections 738 et seq., of the Code of Civil Procedure, set up certain alleged fraudulent acts whereby her title was clouded. She asked for general equitable relief in addition to the usual prayer that her title to the property should be quieted. Defendants Ira M. Cobe and S. W. Swabey demurred generally and specially. On August 12, 1912, the demurrer was sustained and on August 29, 1912, defendants Cobe and Swabey moved that plaintiff should be denied leave to amend her complaint and for judgment dismissing said action as to them. Their motion was granted in an order reciting that the matter came on regularly, and judgment was accordingly entered dismissing the action as to these two defendants. The appeal is from this judgment.

Appellant insists that the general demurrer could not have been properly sustained because two paragraphs of the complaint state a cause of action to quiet title and the other parts of the pleading, however imperfect they might be, would not destroy it as against a general attack for want of facts.

It is true that in the fifth and sixth paragraphs of the complaint there is a statement of a cause of action to quiet title. These paragraphs are as follows:

"5. That plaintiff is the owner and entitled to the possession of all that real property described as follows, to wit: All of the property referred to, described and designated as 'Burlingame Terrace,' as recorded June 4, 1906, at page 25 on Map Book 4, county recorder's office of San Mateo County, except lots 5 and 25 block 9; lot 5 block 7; lot 24 block 1; lot 5 block 11, lots 1 and 2 block 3; and lot 4 block 12; there being sundry lots and area of and in said 'Burlingame Terrace' in addition to the exceptions hereinabove numbered.

"6. That said defendants claim and assert interests therein adverse to the plaintiff and that the claims of said defendants are without any right whatever, and that said defendants have not nor have any of them any estate, right, title or interest whatever in said land or premises or any part thereof."

Respondents take the position that this is not an ordinary suit to quiet title but that fraud is one of the constituent elements of the cause of action which the plaintiff endeavored to plead and that to support a cause of action which depends upon the proof of fraud, the facts constituting the fraud must be clearly stated.    In this behalf such cases as *Burris* v. *Adams,* 96 Cal. 667, [31 Pac. 565] ; *Estate of Yoell,* 164 Cal. 546, [129 Pac. 999] ; *Burris* v. *Kennedy,* 108 Cal. 343, [41 Pac. 458] ; *McDonald* v. *McCoy,* 121 Cal. 71, [53 Pac. 421], are cited.    Whatever may have been the rule formerly it is now settled that a cause of action to quiet title, pleaded in general form, is practically the same when to these general allegations are added the details of the assserted fraud whereby the defendant's purported title was created (*Henry* v. *Phillips,* 163 Cal. 137, [Ann. Cas. 1914A, 39, 124 Pac. 837] ).    The only difference between a general pleading and one containing added averments of fraud is that the first one states the wrongful claim of defendants in general and the second in detailed terms.    There being a general pleading sufficient in form of a cause of action to quiet title to real property, it follows that the general demurrer could not have been properly sustained.    We must therefore examine the complaint in view of the special demurrer.

The earlier part of the complaint was devoted to allegations that A. F. Martel was the principal stockholder and the controlling power in The Market Street Bank and The Market Street Securities Company and that he used his position to appropriate the funds and property of the said corporations, particularly of the bank, to hinder, delay, and defraud the depositors, creditors, and clients of the bank, of whom plaintiff was one.    Following the assertion of title quoted above are allegations that Martel, in pursuance of a conspiracy and for his own convenience, ''by and with the consent, connivance and acquiescence of the defendants'' (including these demurrants), caused his ''general ultility man,'' one Charles W. Smith, fraudulently to execute a certificate and declaration that he was the owner of said property and that said Smith did ''thereon obtain the recording of a map of said real estate, in Map Book 4, at page 25 of the public records of and in the county recorder's office of said San Mateo County, California, wherein and whereby the formula and name 'Burlingame Terrace' was substituted for the previous

surveys, metes and bounds, adopted and used to describe and
identify and so accurately describing and identifying said
property; said change and alteration of the description being
calculated and intended to confuse and mislead, and so did
confuse and mislead the identification of said property gener-
ally, except upon close scrutiny and investigation, which it
was assumed by said Martel, and his said co-conspirators
would not be, and actually was not made by the persons
hereinafter referred to, the patrons of said Market Street
Bank, and the general public whom it was intended to confuse
and mislead, and likewise give and impress respectively, with
an exaggerated idea and estimate of its importance and value,
as 'Burlingame Terrace' over and above its estimate and value
under the description previously used and in vogue; that said
'Burlingame Terrace' has no existence, except such, if any,
as it obtained from the aforesaid false and fraudulent records
of said map.'' It is further averred that in pursuance of a
plan to permit Martel to convert the funds of the bank to his
own use, he arranged to ''borrow'' four thousand dollars from
the bank by giving as security therefor a false claim against
the real property, in form a deed, which was to be held by the
bank without recordation and exhibited to any person or
visiting authority as Martel might desire either as a mortgage
or a conveyance absolute to impress the person seeing it with
the solvency of the institution. According to the pleading,
when the deed had served its purpose it was to be returned
to Martel without being recorded and the sum ''borrowed''
was to be credited by the bank with repayment by personal
services falsely and fraudulently assumed to have been ren-
dered by him to the bank. Pursuant to the scheme (it is
averred), Martel caused Smith to execute a deed, sufficient in
form, to another ''utility man,'' Sylvester, and cause said
deed to be recorded. He likewise caused Sylvester to execute
a deed of said property, good in form to the bank but ''no
reference was therein made to said 'Burlingame Terrace,' or
said map thereof, said real property being described by metes
and bounds as and according to survey and description previ-
ously thereto in use.'' This scheme was carried out to the
extent of the ''borrowing'' or converting to his own use by
Martel of four thousand dollars from the bank and the false
crediting of its repayment in supposed services. All this, it
is stated in the complaint, was done by the connivance and

acquiescence of the bank. According to the further allegations Martel concealed from the directors of The Market Street Securities Company all knowledge of the execution of the deed by Sylvester to The Market Street Bank, but in pursuance of his fraudulent scheme arranged, by mutual agreement between the two corporations, that Sylvester should be employed by the Securities Company, and as such employee, hold a claim to said real property "as and for, and in its, said Market Street Securities Company's interest and behalf, in order to assert a false claim to said real property." The twelfth paragraph of the complaint follows in which it is alleged "That said scheme, plan, and arrangement was thereon consummated, effected, and carried out by said Martel with the consent, connivance, and acquiescence of said Market Street Securities Company, and said Market Street Bank, and said other defendants." It is impossible to tell whether the above quoted paragraph refers to Martel's scheme to keep the directors of the Securities Company ignorant of Sylvester's deed to the bank, the arrangement by which Sylvester was employed, or the plan whereby the false claim was to be asserted. Next come averments that subsequently The Market Street Bank with full knowledge of the "falsity of said claims" and "for the purpose of creating an apparent legal title in itself to said land adverse to said beneficiaries and in violation of its agreement to keep said deed unrecorded and unpublished, caused said secret deed to itself so as aforesaid executed by said defendant Sylvester prior thereto and theretofore, by agreement aforesaid, kept unpublished, and unrecorded, to be recorded." What "beneficiaries" are meant does not appear. It is then alleged that after such recordation the defendant bank executed and recorded a deed of the property to Ira M. Cobe "for the purposes aforesaid," describing the property only by reference to the map and as said "Burlingame Terrace." The expression "purposes aforesaid" is exceedingly vague in view of the various sinister purposes and schemes sought to be explained in the preceding part of the complaint. Next follows a statement, on information and belief, that Cobe is a "mythical person and a fictitious creation of said Martel, and one or more of said other defendants, and an alias for said Martel." But there is the further assertion that if he have any existence he "cannot now, and could not at any

time heretofore be found in the state of California, but is wholly a mythical and fictitious character, assumed and represented by said Martel, or some one procured and employed by him to that end, whenever he, or any of said defendants deemed, or deems it necessary that he should materialize, that is to say receive or execute any written instrument in furtherance of said conspiracy to make false claims to said property.'' There is a statement that Swabey and Cobe, if the latter exists at all, cannot be found in the state, that both are insolvent and no judgment at law could be enforced against them or either of them. The next paragraph announces that the acts of the defendants, particularly the recording of the deed executed by Sylvester, are a cloud on plaintiff's title and a fraud thereon, making said title uncertain and ''in a great measure valueless.'' The paragraph before the prayer of the complaint contains the statement that plaintiff cannot from lack of knowledge be more certain and specific ''as to the particulars of the claims of said defendants and each of them to the said property, or as to the dates, times, or further particulars of said claims, but alleges that all the said particulars are and were at all the said times within the knowledge of the said defendants.''

The complaint is characterized in the special demurrer as uncertain, ambiguous, and unintelligible because it does not appear therefrom with sufficient certainty or at all that Martel, Sylvester, Smith, or The Market Street Bank ever had any title to the property or that the alleged title of plaintiff was derived through these persons; and because it does not appear how the purported acts of fraud denounced in the complaint operated to make plaintiff's title uncertain or in a great measure valueless.

It is asserted by counsel for respondents that plaintiff is attempting to set up a title formerly in Martel and is complaining of various alleged fraudulent acts of Martel and the other defendants tending to cloud her title; but it is very plain, says counsel, that the complaint fails to show that any of the defendants ever had any title to the property. Appellant's counsel insists that the theory of the pleading was that plaintiff had a title superior to any asserted rights of any of the defendants and antedating the false claim set up under the fabricated map of ''Burlingame Terrace.'' But the complaint utterly fails to set up any such antecedent title in the

plaintiff. It contains the averment that "Burlingame Ter-
race" has no existence except such as is derived from the
filing of "false and fraudulent records" of a certain map.
Yet the paragraph in which is pleaded plaintiff's claim of
title describes the property as certain lots designated as being
in "Burlingame Terrace as recorded June 4, 1906, at page
225 on Map Book 4, county recorder's office of San Mateo
County," the very map which is stigmatized in another part
of the complaint as a fraudulent document. So far as these
allegations are concerned it is impossible to determine whether
plaintiff is endeavoring to establish her title upon that falsely
asserted by Smith or not. The fact that the terminology of
the map filed by Smith is used, lends force to the respondents'
contention that here was an attempt to set up a title formerly
in one of the defendants. In the view most liberal to the
pleading it is uncertain whether or not plaintiff seeks to found
her title upon that of some one of the defendants. For this
uncertainty and the ambiguity of the allegations the special
demurrer was properly sustained.

For like reason it is impossible to tell how the alleged
fraudulent acts of the defendants could cloud any title which
plaintiff might have acquired. Having pleaded that "Burl-
ingame Terrace" was created in perjury and iniquity and
that she owns property therein she has failed to allege how
her title became lawful and how any fraudulent acts of the
defendants or any of them (even granting that fraud is suffi-
ciently pleaded) could impeach her title.

But there was no sufficient allegation of fraud. Cobe is
variously described as a fictitious person, an alias and a mythi-
cal character assumed by Martel or some one procured by
him whenever it was deemed necessary to receive or execute
instruments. That such a bodiless, intangible, ethereal,
mythical, imaginary, ghostly, and altogether impalpable per-
son may not be convicted of fraudulent practices, needs no
argument. The commission of a fraud is a personal accom-
plishment, however airy and unsubstantial the means em-
ployed. There is no allegation that Cobe exists except the
statement that *if* he exists, he is absent from the state and
cannot be found. Even if this should be deemed enough to
give him a personality, there are no facts sufficiently alleged
to connect him with the fraud. He was merely the grantee
in the deed from the bank and while that conveyance was

made "for the purposes aforesaid" there is nothing to show that he knew of those purposes (whatever they were), even if we assume that they were fraudulent purposes. In the seventh paragraph of the complaint both Swabey and Cobe are mc itioned. It is there alleged that "as a *part* of said scheme" (which had just been referred to as one "hereinafter complained of") Martel, "with the consent, connivance and acquiescence of the defendants" (naming Cobe and Swabey among them) caused Smith to make and record the false certificate and map by which "Burlingame Terrace" was given an apparent existence. It nowhere appears how they connived, in what manner they acquiesced, or how their connivance and acquiescence contributed to the injury to plaintiff's title, nor is there any statement of facts showing their participation in that part of Martel's alleged fraudulent practices following the recordation of the map.

Plaintiff insists that she should have been allowed to amend her complaint, citing in that behalf, *Schaake* v. *Eagle Automatic Can Co.,* 135 Cal. 480, [63 Pac. 1025, 67 Pac. 363], and *Bryan* v. *Abbott,* 131 Cal. 223, [63 Pac. 363]. Neither authority sustains her position. In the latter case this court merely held that the lower court erred in sustaining the demurrer. In the Schaake case it was held that whereas the complaint stated a cause of action and the demurrer was sustained on the ground of uncertainty, the court abused its discretion in forbidding amendment whereby the uncertainty might be cured. In the case at bar the special demurrer was properly sustained and the court's order made no mention of amendment. Seventeen days later, upon motion which regularly came on to be heard, the order denying leave to amend was made. Plaintiff did not appear by attorney or otherwise at the hearing of this motion, and as there is no showing that any request was ever made for leave to amend, she may not now complain of the court's action.

While it is undoubtedly error for a court arbitrarily to refuse permission to a pleader to amend a complaint after sustaining a demurrer on the special ground of uncertainty or the like, it is not necessary in making the order sustaining the demurrer to say anything about leave to amend. (*Smith* v. *Taylor,* 82 Cal. 541, [23 Pac. 217].) Error will not be presumed where the record fails to show that leave to amend was asked and refused. (*Robertson* v. *Burrell,* 110 Cal. 579,

[42 Pac. 1086]; *Williamson* v. *Joyce,* 140 Cal. 671, [74 Pac. 290]; *Prince* v. *Lamb,* 128 Cal. 130, [60 Pac. 689]; *Durrell* v. *Dooner,* 119 Cal. 413, [51 Pac. 628]; *Buckley* v. *Howe,* 86 Cal. 605, [25 Pac. 132]; *Campbell* v. *Freeman,* 99 Cal. 549, [34 Pac. 113].)

A plaintiff who has declined to amend his complaint, after a demurrer sustained, which is both general and special, must stand upon his pleading as against both grounds of demurrer. (*Martinovich* v. *Wooley,* 128 Cal. 144, [60 Pac. 760].)

The judgment is affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.