[L. A. No. 3569. In Bank.—September 21, 1916.] *

## NATHAN NEWBY, Appellant, v. TIMES-MIRROR COMPANY (a Corporation), Respondent.

LIBEL—ALTERATION OF PUBLIC RECORDS—TRUTH OF CHARGE.—The truth of an alleged libel, based upon a publication in a newspaper asserting of the plaintiff, an attorney at law, that he was accused of the commission of a felony in altering a public record, is technically established by evidence that the attorney, shortly after he had entered a satisfaction of a judgment on the margin of the judgment-book, upon discovering that the entry had been induced through a fraud perpetrated upon his client, caused the entry of satisfaction to be marked out by the clerk.

ID.—INTENT IMMATERIAL TO CRIME OF ALTERING PUBLIC RECORD.—The act itself of defacing or altering a record kept officially in any public office, irrespective of the intent with which it is done, constitutes the offense defined in sections 113 and 114 of the Penal Code.

ID.—LIBELOUS CARTOON—IMPUTATION OF HYPOCRISY AND CHANGING OF RECORDS.—The fact that the plaintiff caused such alteration to be made is not a defense to a further libelous publication consisting of a cartoon picturing the plaintiff and several other persons, as engaged in transactions either disreputable, dishonest, or ridiculous, and in which the plaintiff was portrayed with a large open book in front of him, labeled "Public Records," a pen in his hand in the act of writing or marking in the book, with a sinister leer in his eyes and represented as saying "I'll change 'em," and having above

the cartoon the words, "And these are our leading 'reformers,'" and below it the words, "All hypocrites are sinners, but, thank God, all sinners are not hypocrites."

ID. — PUBLICATION DURING POLITICAL CAMPAIGN — PRIVILEGED PUBLICATION—MITIGATION OF DAMAGES.—The facts that such cartoon was published during the heat of a local political campaign, in which the plaintiff was prominently identified with a party opposed by the newspaper, and was intended as a facetious rejoinder to adverse criticisms made by members of such party, do not constitute a defense to the libel, nor render the publication privileged, and can be considered only in mitigation of damages.

ID.—CHARGE OF HYPOCRISY.—It is libelous *per se* to falsely charge that a person is a hypocrite.

ID.—CONSTRUCTION OF CARTOON—FINDING NOT SUSTAINED BY EVIDENCE. Such cartoon can only be construed as imputing that the plaintiff was a hypocrite, or was in the habit of changing public records, and a finding by the jury of a contrary meaning is not sustained by the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

Edwin A. Meserve, William F. Palmer, and Lewis R. Works, for Appellant.

Hunsaker & Britt, Denis & Loewenthal, and John A. Powell, for Respondent.

SHAW, J.—The plaintiff appeals from the judgment and from an order denying him a new trial.

The action is in damages for libel. The complaint contains six counts, each setting forth a different publication claimed to be libelous. The defendant is the publisher of the "Los Angeles Times," a daily newspaper of large and general circulation, published in the city of Los Angeles. The alleged libels consist of articles published in that newspaper. There was a trial by jury, resulting in a verdict for the defendant.

There was no substantial conflict in the evidence nor any serious dispute concerning the facts. The following are the facts to which the articles complained of relate and upon which they were founded.

Nathan Newby, at the time of the publications, in September, October, and November, 1909, had been practicing law in Los Angeles for the preceding fourteen years. He was a man of good character and reputation, and was a well-known lawyer in active practice and in good standing, being one of a firm of lawyers practicing as Valentine & Newby. Prior to July, 1909, one Blumer had obtained a judgment by default in the superior court of Los Angeles County against Felix Mayhew for the recovery of $8,750. An execution had been duly issued thereon to the sheriff of Los Angeles County. A motion by Mayhew to set aside the judgment was pending. Valentine and Newby were attorneys for the plaintiff in the judgment, and Percy R. Wilson was the attorney for Mayhew. On or about July 23, 1909, the parties agreed on a settlement whereby the plaintiff was to accept five thousand dollars in money in full satisfaction of the judgment. Mayhew procured a check on the National Bank of California for five thousand dollars, payable to himself and duly certified by the cashier for that sum, and Newby, for the plaintiff, agreed to accept this check, properly indorsed, in lieu of the money, upon the settlement. Pursuant to this agreement, and by arrangement, on the following day, July 24, 1909, Newby, Mayhew, Wilson, and McCabe, a lawyer, also acting for Mayhew, went together to the office of the county clerk, in order that Mayhew might there deliver the check to Newby, and Newby there enter satisfaction of the judgment and thereupon deliver to Wilson an order to the sheriff to release any property held by him under the execution. In the meantime the check had been duly indorsed by Mayhew to Valentine & Newby, and Mayhew, in collusion with McCabe, but without Wilson's knowledge, had surreptitiously prepared, ready for filing, a complaint in his own name against Blumer, the National Bank of California, Newby, and others, to enjoin payment of the check about to be delivered, together with a restraining order to the same effect ready for the signature of the judge on presentation. None of the other parties had any knowledge of the preparation or existence of these papers or of the design to enjoin the payment of the check after its delivery.

At the clerk's office, which was in the courthouse, Ross, the judgment-book clerk, produced the judgment-book and with a rubber stamp impressed on the margin of the entry of the

judgment of *Blumer* v. *Mayhew* an entry of satisfaction thereof. Mayhew then delivered the five thousand dollar check to Newby who thereupon signed the firm name, "Valentine & Newby, attorneys for plaintiff," to the entry of satisfaction, handed to Wilson the order to the sheriff for the release of property levied on, and passed to the deputy clerk one dollar to pay the fee of twenty-five cents for the entry. The deputy then went back to the cash drawer for change and Newby stood awaiting it. McCabe and Mayhew, saying that they supposed they were through, hurriedly left the room. Wilson also left the room with the order of release for the sheriff. While the deputy was getting the change and Newby was waiting for it, Mayhew and McCabe proceeded to the chambers of a judge of the superior court, presented to him the complaint and order for the injunction against payment of the check just delivered, and the judge signed the order and delivered it to them. All this occupied but two or three minutes. While Newby was still awaiting change, the injunction aforesaid, together with a summons in the injunction suit, which had been begun by the filing of the papers in that short space of time, were served upon him by some person other than McCabe or Mayhew.

Quickly examining the papers served on him, Newby perceived the gross fraud attempted, and at once called out to the clerk that he had been "flim-flammed" in the satisfaction of judgment and that he desired immediately to mark it out, showing the deputy the said injunction order. The deputy thereupon turned to the entry of satisfaction, took a pen and drew several canceling lines across it and wrote beneath it the words: "Marked out at my request." Newby then signed the name "Valentine & Newby" under said words. He then left the room, intercepted Wilson before he had delivered the release to the sheriff and told him of the injunction. Wilson expressed his indignation and he and Newby then went together to the bank. There they found a person serving the injunction papers on the officers of the bank. Newby presented the check, the bank declined to pay it, and it never has been paid.

All this occurred on Saturday. On the following Monday Wilson withdrew his name as attorney for Mayhew in the case of *Blumer* v. *Mayhew,* and Newby procured from the judge an order denying Mayhew's motion to vacate the judgment.

Newby afterward began proceedings by motion for a formal order by the court setting aside the said entry of satisfaction. This motion came on for hearing on September 21, 1909. At that time an attorney in the interest of Mayhew called the matter to the attention of the defendant's city editor, who immediately detailed a reporter of that paper to get the facts and write up the "story." He proceeded to do so, and the article set forth in the first count of the complaint published in the "Times" on September 22, 1909, was the result. It states the facts substantially as above related, but added that Newby was accused of a felony in altering a public record, that the district attorney was considering the facts, and that Mayhew was willing to swear to a complaint charging Newby with such offense. Although not material to our consideration of the case, it is but just to add that the court, after investigation, granted the motion to set aside the entry of satisfaction, and that it does not appear that Newby was ever prosecuted for having it "marked out."

The second count is based on a publication in the issue of the "Times" of October 4, 1909. This consisted of a cartoon picturing Newby and several other citizens of Los Angeles, all caricatures and obviously intended to subject the persons to ridicule and obloquy. Above the cartoon were the words: "And these are our leading 'reformers.'" Below it were the words: "All hypocrites are sinners, but, thank God, all sinners are not hypocrites." Newby was portrayed with a large open book in front of him, labeled "Public Records," a pen in his hand in the act of writing or marking in the book, and a sinister leer in his eyes, and was represented as saying, "I'll change 'em." The complaint alleged that by this the defendant intended to bring him into public discredit and obloquy, and to convey the meaning that the plaintiff was in the habit of changing public records, that he was not sincere in his political activities, but was a hypocrite, and that it was so understood by those who saw the cartoon.

The third count is based on two publications in the "Times" of October 5, 1909. The first related the evidence given in court the day before on the hearing of the motion to set aside the aforesaid satisfaction of judgment. It is not materially different from the facts related in the publication of September 22d. The second article was the following paragraph in the editorial columns: "If it were not for court records and

newspaper files and the like of that, there are some Los Angeles 'reformers' who would *exude de cologne* instead of the familiar stench that now accompanies them on their devious peregrinations." These, it is alleged, were intended, and were understood by those who read the articles, to mean that plaintiff was unworthy of confidence and could not be trusted, and that his record, when exposed, was a stench in the nostrils of all decent citizens.

The fourth publication complained of was made on October 29, 1909. It referred to an initiative petition filed with the city clerk of Los Angeles by Newby on behalf of the church federation for the passage of an ordinance to prohibit gaming, and which, the article suggested, would forbid the shaking of dice for cigars and all forms of gambling. The article referred to Newby as "the arch-reformer, Nathan Newby," and stated that he and others had "volubly and defiantly expressed to the council a desire to stop humble citizens from shaking dice for cigars," "before it was found Newby had been tampering with the county records." It was alleged that this was intended and understood to mean that Newby was insincere in his efforts to better moral conditions in Los Angeles and was unworthy of confidence.

The fifth publication, on November 16, 1909, referred to the same matter and was as follows: "Then Nathan Newby's anti-gambling ordinance will have place in the question box. It aims to prevent smokers from joining in a friendly game of dice with the cigar store clerk with the cigars at stake. This so shocked Nathan that he forgot to alter any more public records." This, it is alleged, was meant and understood to mean that Newby was in the habit of altering public records.

The sixth count is based on a publication of November 25, 1909. It is not important to our discussion.

It would perhaps puzzle a person not familiar with the Penal Code to discover in the conduct of Mr. Newby, as detailed above, anything immoral or reprehensible, or other than a commendable zeal to protect his client against palpable fraud. But sections 113 and 114 of the Penal Code declare that it is a felony for any person to deface or alter a record or any part thereof kept officially in any public office. The marking out of the entry of satisfaction by drawing lines across it with a pen was done by the deputy clerk at the request of Newby, who is, consequently, equally responsible

therefor with said deputy.   It was a defacement of a public record.   It is clear from the facts stated that Newby was actuated solely by the praiseworthy purpose of frustrating the fraudulent acts of Mayhew in procuring the entry of satisfaction to be made without consideration and that his intent was not in any wise criminal in character.   It was but an irregular method of effecting a righteous result.   Nevertheless, so great is the care of the state that the public records shall remain unchanged, except when changed in an authorized manner, the statute is so drawn as to make even such laudable defacement a felony.   The intent is immaterial.   The act itself without intent other than that of doing it, constitutes the offense, regardless of the object.   This has been expressly decided in this state and is the general rule in respect to statutory offenses of that kind.   (*People* v. *O'Brien,* 96 Cal. 175, [31 Pac. 45] ; *People* v. *Tomalty,* 14 Cal. App. 229, [111 Pac. 513].)   Therefore, although the plaintiff was guilty of no moral wrong or bad intent in the matter, it was technically true that he was accused of the commission of a felony.   The answer alleges as a defense to the first count that the several matters complained of therein as libels upon the plaintiff were and are true, setting forth the particular facts which it is claimed establish the truth of that charge.   In so far as the publications assert that the plaintiff was accused of the commission of a felony, confined as they all are to the act of crossing out the entry of satisfaction of the judgment in *Blumer* v. *Mayhew,* the defense of truth is established by the evidence, although the offense was entirely technical, was without moral guilt, and was intended to bring about justice.

The truth of this part of the matter complained of, however, does not establish a defense to the other libelous publications concerning plaintiff.   With reference to the cartoon or caricature of plaintiff and others with certain inscriptions upon it published in the "Times" of October 4, 1909,   the defendant in its answer alleged it was made in the midst of a strenuous local political campaign in which the plaintiff was identified with and prominent in the party opposed by the "Times" newspaper, and known as the Good Government League, or reformers, that cartoons were frequently published by or in behalf of the respective parties in the conduct of the campaign that in carrying on its part of the campaign the "Times" published said cartoon as "a merry and harmless pictorial

allusion to the leaders of said reformers as a political class, and not as private individuals, and merely by way of facetious rejoinder to many political criticisms and censures'' of the party supported by the ''Times,'' made by said reformers in public speeches and newspapers. These facts could only be considered in mitigation of damages. They do not constitute a defense. The case does not come within the rule as to privileged communications, as laid down in subdivision 3 of section 47 of the Civil Code. In *Wilson* v. *Fitch,* 41 Cal. 382, the court said: ''Nor can a defamatory publication in a public journal be said to be privileged simply because it relates to a subject of public interest, and was published in good faith, without malice, and from laudable motives.'' (*Edwards* v. *San Jose etc. Soc.,* 99 Cal. 438, [37 Am. St. Rep. 70, 34 Pac. 128]; *Gilman* v. *McClatchy,* 111 Cal. 606, 614, [44 Pac. 241].) The duty of a newspaper to the public does not justify the publication of false and defamatory matter concerning a private citizen merely because he is active in promoting his own political views. A publication concerning such person, if libelous in its nature, cannot be excused on the ground that the occasion is privileged, and can be justified only by pleading and proving that it is true. And the fact that the matter published tends to cause merriment, or is a ''facetious rejoinder'' to adverse criticisms made by other persons, does not justify the wrong. It is libelous *per se* to falsely charge that a person is a hypocrite.

The answer does not allege that the imputation of hypocrisy to Newby, or the imputation that he was in the habit of altering public records, alleged to be the purport of said cartoon, were true, but denied that it was susceptible of that meaning. The court below, at the request of the plaintiff, instructed the jury that it should determine whether or not said cartoon would fairly represent to the ordinary reader that the plaintiff was a hypocrite and was in the habit of changing public records, and that if it was found to have that meaning the plaintiff would be entitled to recover on the second count, unless it was proved to be true that plaintiff was a hypocrite and was in the habit of changing public records. The verdict in favor of the defendant necessarily implies that the jury either found that the cartoon was not susceptible of the meaning imputed to it, or found that plaintiff was a hypocrite and was in the habit of changing public records. The plaintiff

insists that the evidence does not support either of these find-
ings, and this insufficiency is assigned as cause for a new
trial.

The instruction that the jury might find for the defendant
if the imputation to Newby of hypocrisy and the habit of al-
tering public records were proven was not properly within the
issues, inasmuch as the answer does not aver the truth of
these charges.   As the plaintiff requested the instruction, he
cannot complain that it was given, but he may make the point
that the implied findings are not supported by the evidence.

There was no evidence whatever to the effect that Newby
was a hypocrite, or that he was in the habit of altering public
records.   The act of altering the entry in the case of *Blumer*
v. *Mayhew,* when considered in the light of circumstances un-
der which it was done, does not tend to show hypocrisy, or
any sort of depravity in the character of Newby.   It only
shows that he was in error as to the lawful method of correct-
ing the wrong attempted by Mayhew.   Any finding that the
charge of hypocrisy was true would be contrary to the evi-
dence.   It is, therefore, to be presumed that the jury did not
find that charge to be true.   The verdict can only be sup-
ported, so far as this count is concerned, on the theory that
the jury concluded that the cartoon would not, to an ordi-
nary reader, bear the meaning that the plaintiff was a hypo-
crite or was in the habit of changing public records.

The evidence does not justify such conclusion.   The head-
ing to the cartoon, consisting of the phrase, "And these are
our leading 'reformers,' " in itself implied that the persons
pictured were not worthy to be called reformers and were
claiming a virtue they did not possess.   The statement below:
"All hypocrites are sinners, but, thank God, all sinners are
not hypocrites," taken in connection with the admitted fact
that these persons were generally known as "reformers" in
the pending political campaign, was nothing less than an in-
direct assertion that the persons whose pictures appeared
above were both sinners and hypocrites, while their opponents
might be sinners, but were not hypocrites.   This meaning was
also indicated by the fact that the four persons, other than
Newby, shown in the cartoon, were each portrayed as engaged
in transactions either disreputable, dishonest, or ridiculous,
and, further, by the sinister expression on the face of Newby
as given in the cartoon.   All these circumstances may be con-

sidered. (*Bettner* v. *Holt,* 70 Cal. 274, [11 Pac. 713].) Newby was not named in the cartoon, but it is practically conceded that the picture was sufficiently like him to be readily recognized by all who knew him. No person of ordinary intelligence could fail to perceive that the cartoon was intended to suggest that the plaintiff was a hypocrite posing as a reformer. The verdict on this point is, therefore, contrary to the evidence. The plaintiff was entitled to recover on this count, regardless of the weakness of his case on other counts.

We do not mean to intimate that the other publications set forth in the complaint do not, in effect, assert that the plaintiff was addicted to the changing of public records and impute to him a moral obliquity or depravity which was not established by his conduct in the case of *Blumer* v. *Mayhew,* and which was no part of his character, or that they do not also impute to him hypocrisy and insincerity. These are, for the most part, questions of fact as to which, upon another trial, the result may be different. Our conclusion with regard to the second count makes it unnecessary to consider them further upon this appeal.

The judgment and order are reversed.

Sloss, J., Melvin, J., Lorigan, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.