*Litchfield,*
June, 1848.

Graves
*v.*
Waller.

## GRAVES *against* WALLER.

Where the plaintiff in an action for a libel, had set out in his declaration an article published by the defendant in a newspaper, which the plaintiff claimed to be libellous; and on the trial, the defendant selected a certain portion of the words of such article, which he claimed were proved to be true, and if otherwise, were not libellous, and so he prayed the court to instruct the jury; the court, after defining a libel, and pointing out what would constitute one, instructed the jury, that they might consider the whole libellous matter in connexion with the circumstances proved or admitted, and say, what was the meaning of the writing—what it imputed to the plaintiff, as to motives, objects, principles, acts and character—and if they were such as to make the writing libellous according to the definition previously given, and it was false and malicious, they would find the matter libellous, and sufficient to sustain the action; it was held, that this direction was unexceptionable.

If there be good and bad counts, or good and bad matter in the same count, the presumption is, that damages are given on the good parts only.

THIS was an action for a libel. The declaration alleged, that there being sundry suits at law pending in the courts of *Litchfield* county, brought by the plaintiff against *Sylvanus Merwin*, and various controversies and matters of difference existing between them, it was, on the 16th of *October* 1845, agreed between them to refer all such suits, controversies and matters of difference to the final arbitrament of three persons, under a rule of court; that such reference being accordingly made a rule of court, at an adjourned term of the superior court then in session, the arbitrators, on the 6th of *January* 1846, met the parties on the business of their appointment; that it was then agreed between the plaintiff and *Merwin*, that the plaintiff should give to *Merwin's* wife [who was a daughter of the plaintiff,] a conveyance of certain lands, worth 3500 dollars, and that this sum should, by the arbitrators, be first deducted from the plaintiff's claims against *Merwin*, and that they should make their award that that amount of such claims was relinquished, by the plaintiff, to *Merwin's* wife, as advancement from the plaintiff, in consideration of his affection for her; that it was also, at the same time, agreed between the plaintiff and *Merwin*, that if the arbitrators should find that the plaintiff, after making said allowance, was indebted to *Merwin*, he, the plaintiff, should pay *Merwin* such sum

*Litchfield,*
June, 1848.

Graves
*v.*
Waller.

as should be found due to him, and if, on the other hand, the arbitrators, after deducting said gift of 3500 dollars from the plaintiff's claims against *Merwin*, should still find a balance due from him to the plaintiff, he should pay to the plaintiff such balance; that the arbitrators thereupon found the sum of 863 dollars, 34 cents, due from *Merwin* to the plaintiff, and made their award accordingly, which was returned to and accepted by the superior court, and execution was issued thereon; that the plaintiff used every endeavour to have this execution satisfied, without resorting to a levy thereof, and offered to settle it, by good notes, or the payment of money in part, and extending the time for the payment of the residue; all of which facts came to the knowledge of the defendant. The declaration then averred, that the defendant, on the 19th of *May* 1846, composed and published in a newspaper, called " *The New-Milford Republican,*" the following false, malicious and libellous matter, of and concerning the plaintiff, and said execution, and the proceedings had thereon: " *Merwin* called upon *E. B. Goodsell, Burroughs Benedict* and myself, as witnesses to his tender, as *Knapp* [the officer,] had levied the execution upon his, *Merwin's*, real estate, to save the same from ruin. *Merwin* thought best to give up his personal property, which he commenced doing." It was then averred, that another part of said libel contained the following words: "Just at night, I was at *Merwin's*, when I found his house completely stripped, not having even a pillow for his family to lay their heads upon. I went home, harnessed my horses, loaded two of my beds, with the bedding, into the wagon, and carried them to *Merwin's* house; took part of his little children home with me, and loaded my wagon again with chairs, and carried them to *Merwin's*, where I, with the assistance of *Burroughs Benedict*, fitted up a bed for *Merwin* and his wife, after having been stripped of every comfort, by him who should have reached the hand of affection, instead of wielding the wand of distress, torture and ruin. It being late, I returned home, well compensated for my trouble, by the reflection that I had rendered aid to those who were shamefully abused, by a rapacious creditor. A few days before this, I went to *Graves*, to settle up this execution for *Merwin*, when I tried, in various ways, to stay

his hand.  I tried, and tried in vain.  I offered him money and good notes on interest then due, but to no purpose. At the same time, he boasted of his immense riches and money at use ; said no one knew how much he was worth; and yet, strange to say, I find said *Graves* enforcing this execution upon the property of his son-in-law, after every reasonable effort had been made by myself, to satisfy the same."

The defendant pleaded the general issue, with notice that he should give evidence to prove the truth of the words complained of.

The cause was tried, at *Litchfield, August* term 1847, before *Ellsworth*, J.

On the trial, the plaintiff produced in evidence two numbers of a certain newspaper, in each of which was an article, purporting to have been signed by the defendant, and containing the words set out in the declaration, and then offered evidence to prove, that the defendant authorized the publication of that article in said newspaper.  The defendant claimed, that all that part of the writing in question immediately preceding the words " after having been stripped of every comfort," &c., had been proved to be true, by the evidence introduced by him for that purpose ; and that if he had failed in proving them true, they were neither defamatory nor actionable ; and he prayed the court so to instruct the jury.  The court, after defining a libel and pointing out what would constitute one, instructed the jury, that they might consider the whole libellous matter in connexion with the circumstances proved or admitted, and say what was the meaning of the writing ; what it imputed to the plaintiff, as to motives, objects, principles, acts and character; and if they were such as to make the writing libellous, according to the definition of a libel expressed by the court, and it was false and malicious, they would find the matter libellous and sufficient to sustain the action.

The jury returned a verdict for the plaintiff, with 450 dollars damages ; and the defendant moved for a new trial, for a misdirection.

*Church*, in support of the motion, contended, 1. That the

words in question were not libellous, either of themselves, or as connected with any others.

2. That the charge was fitted to mislead the jury. They were instructed, that they might consider the words set out as libellous *in connexion with the facts and circumstances proved or admitted*, when there were none either proved or admitted in any way connected with those words.

3. That the charge was wrong, as it put it to the jury to determine the character and legal effect of the words ; thus making the jury the expounders of the law. The construction of a publication is a question for the court, and not for the jury, to determine. *Haight* v. *Cornell*, 15 *Conn. R.* 83. *Mix* v. *Woodward*, 12 *Conn. R.* 290,1. But it is said, that the court first told the jury what would constitute a libel, and then only left it to them to say whether the words fell within such definition. The motion does not show what the definition was. But whatever it was, it did not of itself determine the construction of the writing. This was still left to the jury ; and the court threw its own pack upon their shoulders.

*Seymour* and *H. B. Graves*, contra, insisted, 1. That the charge was unexceptionable. The action was brought upon the *whole writing*, and not upon any particular part, or upon all the parts taken separately. The words immediately preceding the words " after having stripped" &c. were explanatory of those relied upon as libellous, and were inserted in the declaration to show the connexion and meaning of the latter. The court very properly left the *whole writing* to the jury, in connexion with the circumstances proved or admitted, to say what was its meaning, and whether it was false and malicious. There was nothing left to the jury but *facts and intent ;* and these are within the peculiar province of the jury. This was precisely in accordance with the rule laid down in *Haight* v. *Cornell*, 15 *Conn. R.* 75.

2. That where complete justice has been done by the verdict, and the party against whom it was given has sustained no injury, by the course taken on the trial, it will not be set aside, for a misdirection. *Branch* v. *Doane,* 17 *Conn. R.* 403. and numerous other cases.

*Litchfield,*
June, 1848.
———
Graves
*v.*
Waller.

ELLSWORTH, J.   The question for our consideration, is, should the judge below have charged the jury as claimed by the defendant?   We see no ground of error whatever.

There is no pretence, but that the publication, as entire, is libellous and actionable, if it be untrue.   Now, to involve this question, the defendant selects a part of the libellous matter, and asks the court to instruct the jury, that such extract, separate and isolated, is not defamatory.   The plaintiff had not claimed, that it was.   He had only claimed, that the entire writing was.   Hence the defendant showed no occasion or propriety for the charge asked for.   He might, with equal propriety, have dissected the publication into as many parts as there are lines, words, or letters; and then asked for a charge that such part was not libellous.   This is no way of construing a libellous publication, or any other writing.   The parts are generally dependent; each giving character to the other, and to the whole.   It was never pretended, that what the defendant said of himself was libellous, though it was true that what the defendant said of *his* kindness and sympathy to *Merwin's* family, did, by contrast, make more striking and pungent, the conduct imputed to the plaintiff towards his daughter and her children.   The court could not, with any propriety, have charged the jury in a different manner.   They were told, they might consider the whole matter together, in connexion with the circumstances proved or admitted, and from the whole, say, whether the writing was libellous, according to the definition given.   Any other course would have been alike embarrassing to the jury, unjust to the plaintiff, and puerile in the court.   There is no complaint that the definition of a libel given to the jury, is not satisfactory and correct.   How then, if they have done *their* duty, can the defendant complain?

It is said further, that it belonged to the court to declare what part of the writing is, and what part is not, libellous. Doubtless it is the duty of the court to construe and interpret an isolated writing, as a whole; but this is rarely the case with a libel.   If the fact be so, the court may declare that a paper, or any part of it, is libellous; but generally, the question of libel or not, involves more than the writing alone. That may be designedly ambiguous: it may be a story, a caricature, a picture, an *innuendo.*   In such cases, the *collo-*

*quium* and proof may be all-important; when the whole must be left to the consideration of the jury.

Even if the extract selected by the defendant, had been claimed by the plaintiff to be libellous, or had been distinct from the other parts; even then, it would have been proper for the court to submit the whole to the consideration of the jury, in connexion with the proofs. This is the rule given by this court, in *Haight* v. *Cornell*, 15 *Conn. R.* 75. and likewise by *Greenleaf*, in 2 *Greenl. Ev.* 331. We do not say, the court might not, had the plaintiff asked it, have stated, that this writing, and parts of it even, was libellous on its face; but the plaintiff did not ask it, but was willing the whole should go to the jury; and it would have been absurd for the court to break it into parts, at the request of the defendant.

Besides, we see no ground of complaint for the omission in the charge. No damages were given by the jury, for what the defendant said of himself: this is not the libel published, by the defendant, *of and concerning the plaintiff.* We cannot suppose the jury gave damages because the defendant said of himself, he harnessed up his horses, took two of his beds to *Merwin's* house, carried his children there, &c. This was not claimed to be libellous, except by its connexion with what follows, which is clearly libellous. It is irrational to suppose—indeed, it is against the legal presumption—that twelve sensible men gave damages against the defendant, for the kind things he said of himself. A different rule prevails in analogous cases. If there be good and bad counts, or good and bad matter in the same count, the presumption, in our courts, is, that damages are given on the good parts.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.